UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| R. DAVID WEISSKOPF, *Pro Se*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-12-130 |
| | § | |
| UNITED JEWISH APPEAL- | § | |
| FEDERATION OF JEWISH | § | |
| PHILANTHROPIES OF NEW YORK, | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is Defendant United Jewish Appeal-Federation of
Jewish Philanthropies of New York's Motion to Dismiss for Lack of Subject-Matter
Jurisdiction, Lack of Personal Jurisdiction, and Failure to State a Claim (Document
No. 17); Defendants Kinder Morgan, Inc. and El Paso E&P Company, L.P.'s Motion
to Dismiss for Lack of Subject-Matter Jurisdiction and Failure to State a Claim.
(Document No. 20); and Plaintiff R. David Weisskopf's Motion for Leave of Court
to File Amended Complaint (Document No. 31).  Having considered the motions,
submissions, and applicable law, the Court determines that United Jewish Appeal-
Federation's motion should be granted, El Paso and Kinder Morgan's motion should
be granted, and Plaintiff's motion should be denied.

# I.  BACKGROUND

This case arises under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350).  On December 14, 2011, Plaintiff R. David Weisskopf ("Plaintiff") filed the instant suit against Defendant United Jewish Appeal-Federation of Jewish Philanthropies of New York ("UJA-Federation"), El Paso E&P Company L.P. ("El Paso"), and Kinder Morgan, Inc. ("Kinder Morgan") (collectively, "Defendants") in the United States District Court for the Eastern District of Texas. Plaintiff is a Wisconsin resident who alleges that he and his children are being wrongfully detained in Israel.[1]  Plaintiff is not an alien.

Plaintiff has sued Defendants under the ATS and the TVPA for (i) aiding and abetting crimes against humanity, (ii) reckless disregard for human and parental rights, and (iii) financing and aiding and abetting acts of persecution.[2]  Although it is difficult to pin down exactly what Plaintiff alleges took place, the essence of his Complaint appears to boil down to Plaintiff's displeasure with treatment by the Israeli family-law system as a result of his visitation and child-custody proceedings.

---

[1]      Plaintiff's Complaint ¶ 1.

[2]      *Id.* ¶¶ 77–115.

According to Plaintiff, El Paso and Kinder Morgan are responsible for providing and servicing "nearly $7 million in oil investments" for UJA-Federation.[3] Also according to Plaintiff, UJA-Federation provided charitable funding to a social organization in Israel, the Shiluv Institute for Family & Couple Therapy (the "Shiluv Institute"), that employs a social worker named Ruth Eisenmann ("Eisenmann").[4] Plaintiff claims that UJA-Federation "specifically transferred funds to Shiluv under the euphemistic term 'integration' according to page 60 of their IRS form 990 in 2009."[5]

Plaintiff alleges that he was subject to discriminatory treatment in Israel because of his gender and that Eisenmann and someone named Edna Brownstein "conspired with and paid bribes to Dr. Gutovsky, to file false and exaggerated reports against Plaintiff in court including a 'diagnosis' of 'Active Psychosis' which proved to be bogus."[6] Plaintiff also alleges that Eisenmann "bullied" the Israeli judge in his case "into making harmful rulings" against Plaintiff.[7] For example, Plaintiff claims that his visitation rights with his children were limited to supervised visits, without

---

[3]    *Id.* ¶¶ 3–4.

[4]    *Id.* ¶ 2.

[5]    *Id.* ¶ 22.

[6]    *Id.* ¶ 68.

[7]    *Id.* ¶ 72.

any explanation, and that he and his children "were falsely imprisoned for 1 to 3 hours per week in prison-like conditions as their only contact allowed by Defendants' agent, Ruth Eisenmann, for over 1 year."[8]  Plaintiff further alleges that Eisenmann was Defendants' agent, without any explanation as to how such an agency relationship with Eisenmann was created.[9]  Finally, Plaintiff alleges that Defendants violated his civil and human rights, subjected him to torture, and "financed the total destruction of Plaintiff's ability to work in child welfare or retrain in his usual career after the onslaught of torturous abuses."[10]

While Plaintiff's dispute appears to be with the Israeli judicial system and with an Israeli social worker, he seeks damages in this lawsuit from only the Defendants, which he claims were "the sole proximate cause of the severe and continuing emotional distress that has been suffered by the Plaintiff and other similarly situated individuals."[11]  According to Plaintiff, Defendants' conduct somehow amounts to aiding and abetting torture and crimes against humanity.

---

[8]     *Id.* ¶ 66.

[9]     *Id.* ¶ 70.

[10]    *Id.* ¶¶ 74–75.

[11]    *Id.* ¶ 88.

On December 20, 2011, Magistrate Judge Judith Guthrie, in the Eastern District of Texas, transferred the case to the Southern District of Texas, and the case was assigned to this Court.

On April 3, 2012, UJA-Federation moved to dismiss this lawsuit under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).[12]  On April 16, 2012, Defendants El Paso and Kinder Morgan joined in that motion and moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[13]  Plaintiff failed to respond to theses motions or amend his Complaint within 21 days.  Rather than respond or amend, Plaintiff filed a Notice of Filing Amended Complaint (the "Notice") on May 3, 2012.[14]  In the Notice, Plaintiff indicated that he intended to file an amended complaint by August 1, 2012, the deadline included in the Court's Rule 16 Scheduling Order for amending with leave of court.[15]

---

[12]  UJA-Federation's Dismiss for Lack of Subject-Matter Jurisdiction, Lack of Personal Jurisdiction, and Failure to State a Claim, ECF No. 17.

[13]  Kinder Morgan and El Paso's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Failure to State a Claim, ECF No. 20.

[14]  Plaintiff's Notice of Filing Amended Complaint, ECF No. 27.

[15]  To the extent Plaintiff believed the Court had already granted leave to amend, he misunderstood the Court's Rule 16 Scheduling Order.  That Order merely provided that August 1, 2012 was the deadline to amend with leave of court. *See* Scheduling Order, ECF No. 24.

5

On May 10, 2012, UJA-Federation filed an opposition to Plaintiff's Notice on contending that Plaintiff's Notice was procedurally improper because Plaintiff had failed to provide any indication of the grounds upon which he intended to amend the Complaint.[16] UJA-Federation asserted that the Complaint should be dismissed for the reasons stated in its motion to dismiss and because Plaintiff failed to respond or amend within 21 days of UJA-Federation's filing of its motion to dismiss. *See* S.D. TEX. LOCAL R. 7.4 ("Failure to respond [to a motion] will be taken as a representation of no opposition."). UJA-Federation also argued that amendment would be futile because the Complaint was patently frivolous and no amendment could cure its defects. El Paso and Kinder Morgan joined in UJA-Federation's opposition on May 10, 2012.[17] Plaintiff filed a reply in support of the Notice on May 11, 2012.[18]

On July 1, 2012, Plaintiff filed a Motion for Leave of Court to File an Amended Complaint.[19] The motion for leave did not set out any grounds why amendment should be allowed, but Plaintiff did attach a proposed amended complaint

---

[16]   UJA-Federation's Response to Plaintiff's Notice of Filing Amended Complaint, ECF No. 28.

[17]   El Paso and Kinder Morgan's Opposition to Plaintiff's Notice of Filing Amended Complaint, ECF No. 29.

[18]   Plaintiff's Reply in Support of Notice of Filing Amended Complaint, ECF No. 30.

[19]   Plaintiff's Motion for Leave of Court to File Amended Complaint, ECF No. 31.

(the "Proposed Amendment"). The Proposed Amendment seeks to add (i) eight additional plaintiffs who raise allegations similar to Plaintiff's, (ii) four additional defendants that appear to have no connection to the allegations against the existing Defendants, and (iii) a new cause of action for intentional infliction of emotion distress.

On July 12, 2012, UJA-Federation filed an opposition to Plaintiff's motion for leave to amend.[20] UJA-Federation argued that the Complaint should be dismissed for lack of a response to UJA-Federation's motion to dismiss and that the Court should deny leave to amend because the Proposed Amendment did not cure the existing Complaint's defects. On July 16, 2012, El Paso and Kinder Morgan joined in UJA-Federation's opposition.[21]

## II. STANDARDS OF REVIEW

UJA-Federation, El Paso, and Kinder Morgan move to dismiss Plaintiff's suit under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure contending that this Court lacks subject matter jurisdiction over Plaintiff's ATS claims and that Plaintiff's claims under the TVPA fail to state a claim upon which relief may be

---

[20]  UJA-Federation's Opposition to Plaintiff's Motion for Leave of Court to File Amended Complaint, ECF No. 33.

[21]  El Paso and Kinder Morgan's Opposition to Plaintiff's Motion for Leave of Court to File Amended Complaint, ECF No. 34.

granted. UJA-Federation further moves to dismiss Plaintiff's suit under Rule 12(b)(2) for lack of personal jurisdiction. The relevant standards of review for each motion are stated below.

### A.     Rule 12(b)(1) – Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) requires that a court dismiss a claim if the court does not have subject matter jurisdiction over the dispute. *See* Fed. R. Civ. P. 12(b)(1). A district court must dismiss a complaint under Rule 12(b)(1) if the plaintiff fails in his burden to establish grounds for the court's exercise of subject-matter jurisdiction. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Dismissal for failure to state a claim under the ATS is treated as a dismissal for lack of subject-matter jurisdiction. *See Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 651 (S.D. Tex. 2010).

### B.     Rule 12(b)(6) – Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A court need not accept as true "conclusory

allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 & n.12 (5th Cir. 2007) (internal quotations omitted).

**C.    *Rule 12(b)(2) – Motion to Dismiss for Lack of Personal Jurisdiction***

Federal Rule of Civil Procedure 12(b)(2) requires that a court dismiss a claim if the court does not have personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 12(b)(2). "When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the district court's jurisdiction over the defendant." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999).

### III.  LAW AND ANALYSIS

**A.    *The Court Lacks Personal Jurisdiction Over United Jewish Appeal-Federation of Jewish Philanthropies of New York***

As an initial matter, the Court addresses UJA-Federation's motion to dismiss for lack of personal jurisdiction.  UJA-Federation is a non-profit organization with a mission to care for those in need, strengthen the Jewish people, and inspire a passion for Jewish life and learning.[22]  UJA-Federation is incorporated in and maintains its headquarters in New York.  It is not authorized or registered to do business in Texas; does not have any employees, offices, or bank accounts in Texas;

---

[22]    *See* UJA-Federation, Our Mission http://www.ujafedny.org/our-mission.

does not have a mailing address or a telephone number in Texas; does not pay taxes in Texas; does not advertise in or actively solicit donations from Texas; and does not have a registered agent for service of process in Texas.[23] UJA-Federation is a passive investor (a "working interest" owner) in certain oil and gas properties located in Texas that it received as a gift.[24] UJA-Federation's ownership of these working interests in oil and gas properties was not the product of a deliberate intention to make an investment in Texas.[25] Instead, UJA-Federation's receipt of the working interests in the properties was a fortuity based on a bequest in a donor's will.[26]

When a lawsuit invoking federal-question jurisdiction is based on a statute that does not provide for nationwide service of process, federal courts look to the forum state's law governing personal jurisdiction to determine if the defendant is amenable to process in the forum state. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104-05 (1987), *superseded by statute on other grounds*. Neither the ATS nor the TVPA provide for nationwide service of process. *See* 28 U.S.C. § 1350 and note.

---

[23]   Declaration of Ellen R. Zimmerman ("Zimmerman Declaration") ¶¶ 2–9, 11, 13 (Exhibit 1 to Document No. 17). Neither the Zimmerman Declaration nor the information contained on UJA-Federation's website has been challenged by Plaintiff.

[24]   *Id.* ¶ 12.

[25]   *Id.*

[26]   *Id.*

10

Accordingly, the Court must determine whether the exercise of personal jurisdiction over UJA-Federation comports with Texas law.

Texas's long-arm statute allows courts to exercise jurisdiction over a nonresident who "does business" in Texas.  *See* TEX. CIV. PRAC. & REM. CODE § 17.042.  This statute reaches "as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (internal quotations omitted).  As a result, the long-arm statute and the federal Due Process inquiries are essentially identical.  *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

Personal jurisdiction is proper under the Due Process Clause only if (1) the nonresident "has established minimum contacts with the forum," *i.e.*, the state of Texas, and (2) "the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Moki Mac*, 221 S.W.3d at 575 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Here, under either a specific or general jurisdiction analysis, the result is the same: UJA-Federation does not have the required jurisdictional contacts with the State of Texas.

### 1.    *The Court lacks specific jurisdiction over UJA-Federation*

Specific jurisdiction will not lie unless the non-resident defendant purposefully conducted activities in the forum and the litigation relates to those activities or

contacts. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). A defendant cannot be subject to specific jurisdiction unless there is a "substantial connection" between a nonresident defendant's contacts with Texas and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 584-85.

The only connection alleged between UJA-Federation and Texas is that UJA-Federation purportedly owns $7 million in oil investments located in Tyler, Texas,[27] and that "[t]he Court has subject matter jurisdiction over this case because all three Defendants maintain offices and assets in Tyler, Texas."[28] These allegations cannot subject UJA-Federation to specific jurisdiction, however, because nothing in the Complaint connects those investments to the facts at issue in this case, which involve the alleged maltreatment of a Wisconsin resident by the Israeli judicial system. *See Potkovick v. Reg'l Ventures, Inc.*, 904 S.W.2d 846, 847 (Tex. App.—Eastland 1995, no writ) ("We conclude that mere ownership of the real property alone is insufficient to bestow *in personam* jurisdiction: the ownership of the real property must be the subject of the underlying suit.").

---

[27]     Plaintiff's Complaint ¶¶ 2–4.

[28]     *Id.* ¶ 7.

### 2.    *The Court lacks general jurisdiction over UJA-Federation*

General jurisdiction exists where a nonresident has made "continuous and systematic . . . contacts" with Texas, permitting the forum to exercise jurisdiction over a nonresident on a cause of action unrelated to the defendant's contacts within the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *accord Moki Mac*, 221 S.W.3d at 575. For general jurisdiction to be proper, the defendant must have conducted very substantial activities in the forum. *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 612 (5th Cir. 2008) (holding that defendant's "contacts with Texas . . . lack[ed] the substance or regularity necessary to establish general jurisdiction").

The only alleged basis for jurisdiction over UJA-Federation is its ownership of certain oil and gas investments in Texas. The case law in the Fifth Circuit and in Texas is clear, however, that such allegations, standing alone, provide no basis for the exercise of general jurisdiction over a nonresident defendant. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) (holding that "ownership of realty in the forum unrelated to this litigation would not alone support an exercise of general jurisdiction"); *Asshauer v. Farallon Capital Partners, L.P.*, 319 S.W.3d 1, 20–21 (Tex. App.—Dallas 2008, no pet.) (holding that California limited partnership that invested in multiple companies that held investments in Texas real estate was not

subject to personal jurisdiction); *Bryant v. Roblee*, 153 S.W.3d 626, 630-31 (Tex. App.—Amarillo 2004, no pet.) (holding that non-resident corporation's ownership of loans secured by liens on real property located in Texas did not create general jurisdiction). Therefore, because there is no basis for the Court to exercise personal jurisdiction over UJA-Federation, Plaintiff's suit must be dismissed as to UJA-Federation.

Although the issue of personal jurisdiction over is dispositive as to UJA-Federation, the Court also considers whether Plaintiff's suit should be dismissed for lack of subject-matter jurisdiction and for failure to state a claim. UJA-Federation, El Paso, and Kender Morgan all move to dismiss under Rules 12(b)(1) and 12(b)(6) based on identical arguments. Thus, the Court must reach these issues regardless of whether the lawsuit should be dismissed as to UJA-Federation for lack of personal jurisdiction.

**B.    *The Court Lacks Subject-Matter Jurisdiction Under the Alien Tort Statute***

**1.    *Plaintiff is not an alien***

The ATS provides, in its entirety, that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. A district court lacks subject-matter jurisdiction under the ATS if the plaintiff is not an alien.

14

*See Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164-65 (5th Cir. 1999). Here, Plaintiff alleges that he resides in Stoughton, Wisconsin and that he is currently being wrongfully detained in Israel. Nowhere does Plaintiff allege that he is an alien. Indeed, Plaintiff has previously alleged his United States citizenship in a similar action that he filed in the Western District of Wisconsin.[29] Therefore, because Plaintiff is not an alien, he lacks standing under the ATS, and the Court must dismiss any ATS claims for lack of subject-matter jurisdiction. *See Miner v. Begum*, 8 F. Supp. 2d 643, 643–44 (S.D. Tex. 1998) (holding that court lacked jurisdiction where "Plaintiffs are clearly not aliens").

### 2.    *Plaintiff has not alleged the requisite purposeful conduct*

Plaintiff has not alleged that Defendants acted with the requisite purpose to establish accessorial liability under the ATS. Under customary international law, allegations that a defendant knew or should have known of the primary actor's violation will not support a claim of secondary liability. *See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 259 (2d Cir. 2009) (holding that "the *mens rea* standard for aiding and abetting liability in ATS actions is purpose rather than knowledge alone").

---

[29]    *See* Complaint at 2, *Weisskopf v. Weisskopf*, No. 3:11-cv-00638-slc (W.D. Wis. filed Sept. 16, 2011) ("During the period at issue in this complaint, Plaintiff and Minors 1-3 were all U.S.A. citizens.").

The United States District Court for the Southern District of Texas recently addressed this very issue in *Abecassis v. Wyatt*, 704 F. Supp. 2d 623 (S.D. Tex. 2010) (Rosenthal, J.), where the district court dismissed a complaint under the ATS in part because "[t]here [were] no nonconclusory allegations that any defendant knew that kickbacks paid through [the Iraq Oil For Food Program] were being used to fund terrorist attacks in Israel, much less that any defendant had the purpose of aiding the terrorist attacks." *Id.* at 655–56. Here, just as in *Abecassis*, there are no nonconclusory allegations that Defendants knew that Israelis were allegedly violating Plaintiff's human rights and that Defendants intended to further those violations. Absent well-pled allegations that Defendants intended to further a primary violation of the law of nations, Plaintiff's ATS claims must be dismissed. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 398, 401 (4th Cir. 2011) (affirming dismissal of ATS claims where complaint failed to adequately "allege that the defendant acted with the purpose of facilitating the violation of an international norm").[30]

---

[30]   Even if Plaintiff had alleged that Defendants intended to aid Israelis in violating Plaintiff's human rights, merely funding a primary violator of international law cannot create aiding and abetting liability. *See, e.g., In re South African Apartheid Litig.*, 617 F. Supp. 2d 228, 269 (S.D.N.Y. 2009) (dismissing claims against banks alleged to have provided funds to the South African government to aid and abet apartheid, extrajudicial killing, torture, and prolonged unlawful detention).

16

### 3.   *ATS liability for corporate defendants*

A plaintiff must plead a violation of a United States treaty or the law of nations

to cross the jurisdictional threshold to bring a claim under the ATS.  *See Filartiga v.*

*Pena-Irala*, 630 F.2d 876, 880 (2d Cir. 1980).  Here, Plaintiff's Complaint does not

allege a violation of a United States treaty,[31] and courts have held that corporate

liability "cannot . . . form the basis of a suit [alleging a violation of the law of nations]

under the ATS."  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 148–49 (2d

Cir. 2010), *cert. granted*, 132 S. Ct. 472 (2011).

To state a claim under the law of nations, a complaint must "rest on a norm of

international character accepted by the civilized world and defined with a specificity

comparable to the features of the 18th-century paradigms" that the Supreme Court has

previously recognized, such as violation of safe conducts,[32] infringements of the

rights of ambassadors, or piracy.  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724–25

---

[31]  Plaintiff vaguely alleges that he is entitled to the protections of the Treaty of Friendship, Commerce and Navigation Between the United States of America and Israel, Aug. 23, 1951 [1954], 5 U.S.T. 550, T.I.A.S. No. 2948, under which Plaintiff is "entitled to 'a most favored nations treatment with respect to access to the Courts of Justice." (Compl. ¶ 30.)  But that treaty is a compact between the United States and Israel, and Plaintiff cannot state a claim against Defendants for violation of such an agreement.

[32]  A safe conduct is defined as: "1. A privilege granted by a belligerent allowing an enemy, a neutral, or some other person to travel within or through a designated area for a specified purpose. 2. A document conveying this privilege."  *Black's Law Dictionary* 1453 (9th ed. 2009).

(2004). The ATS "applies only to shockingly egregious violations of universally recognized principles of international law." *Beanal*, 197 F.3d at 167 (citation omitted). For example, *Sosa* held that the ATS did not confer jurisdiction on federal courts for tort claims related to an illegal detention of a Mexican national in Mexico, because the broad principles espoused by the plaintiff regarding illegal detentions merely expressed "an aspiration that exceeds any binding customary rule having the specificity we require." *Sosa*, 542 U.S. at 736–38. Moreover, as the Second Circuit recently held in *Kiobel*, corporate liability for human rights violations is a similarly aspirational theory that lacks the specificity required under *Sosa*.

In *Kiobel*, Nigerian residents sued a number of corporations under the ATS for allegedly aiding and abetting the Nigerian government in committing human rights abuses. In a thoroughly researched and well-reasoned opinion, the Second Circuit determined that "[n]o corporation has ever been subject to *any* form of liability (whether civil, criminal, or otherwise) under the customary international law of human rights." *Kiobel*, 621 F.3d at 148. Accordingly, the court held that "corporate liability has not attained a discernable, much less universal, acceptance among nations of the world in their relations *inter se*, and it cannot . . . as a result, form the basis of a suit under the ATS." *Id.* at 148-49.

18

Some courts have held that a corporate defendant may be liable under the ATS. *See, e.g., Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1263 (11th Cir. 2009), *abrogated in part on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). Although the Fifth Circuit has not addressed this issue, this Court finds that the Second Circuit's opinion in *Kiobel*, which is currently before the Supreme Court on this very issue, is well reasoned.[33] The Court need not decide the issue in this case, however, because it has already held that Plaintiff's ATS claims must be dismissed for two independent reasons—Plaintiff is not an alien, and Plaintiff's Complaint contains no allegations of purposeful conduct. If the Second Circuit's corporate-liability decision in *Kiobel* is affirmed, that would merely be another reason why Plaintiff's ATS claims should be dismissed.

## C.   *Plaintiff's Allegations Fail to State a Claim Under the Torture Victim Protection Act*

Although Plaintiff's Complaint itself claims that this suit is an action filed under the ATS, it mentions in passing that the Court has subject-matter jurisdiction

---

[33]   The Supreme Court has also requested additional briefing and ordered reargument in *Kiobel* on the issue of whether the ATS even confers jurisdiction for acts that occurred outside of the United States. *See Kiobel v. Royal Dutch Petroleum Co.*, 132 S. Ct. 1738, 1738 (2012). This Court declines to reach the issue of the extraterritoriality of the ATS because Plaintiff's ATS claims must be dismissed for other reasons—Plaintiff is not an alien and his Complaint contains no allegations of purposeful conduct.

under the TVPA.[34] But even if Plaintiff's Complaint could be read to include a cause of action under the TVPA, which is questionable, it must be dismissed because it fails to allege a plausible claim for relief as required by *Iqbal*.

"The TVPA authorize[es] a federal statutory cause of action on behalf of victims or their representatives for acts of torture or extrajudicial killing." *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 29–30 (D.D.C. 2007). The TVPA provides that "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture [or extrajudicial killing] shall, in a civil action, be liable for damages to that individual." TVPA § 2(a). A district court must "decline to hear a claim under [the TVPA] if the claimant has not exhausted adequate and available remedies in the place" where the alleged conduct occurred. *Id.* § 2(b).

## 1.     *The Supreme Court has held that corporations cannot be sued under the TVPA*

The TVPA explicitly establishes liability of "[a]n *individual* who . . . subjects an *individual* to torture" or "extrajudicial killing." TVPA § 2(a) (emphasis added). Although until recently there was some dispute as to whether a corporation could be liable under the TVPA, the Supreme Court resolved the issue in *Mohamad v.*

---

[34]     Plaintiff's Complaint ¶ 8.

*Palestinian Authority*, 132 S. Ct. 1702 (2012).  In *Mohamad*, the Supreme Court expressly held that the term "individual," as it is used in the TVPA, "encompasses only natural persons.  Consequently, the Act does not impose liability against organizations." *Id.* at 1705.  Accordingly, Defendants cannot be liable under the TVPA because a corporation can neither be the victim nor the perpetrator in a TVPA case. *See, e.g.*, *Kiobel*, 621 F.3d at 122 n.23 (noting that Congress intended to subject only individuals to liability under the TVPA).

### 2.    *The TVPA does not permit aiding and abetting liability*

Even if Defendants could be sued under the TVPA, Plaintiff's Complaint still fails to state a claim because that statute does not permit liability for aiding and abetting a primary violator. *See Mastafa v. Chevron Corp.*, 759 F. Supp. 2d 297, 300 (S.D.N.Y. 2010) (dismissing TVPA claims because, among other things, the "plain language" of the statute "does not permit aiding-and-abetting liability"); *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1027 (W.D. Wash. 2005) (holding that "an aiding and abetting claim is inconsistent with the TVPA's explicit requirement that a defendant must have acted under 'color of law'"), *aff'd*, 503 F.3d 974 (9th Cir. 2007).  Here, Plaintiff has raised no allegations that Defendants committed a primary violation of the TVPA and his claims must therefore be dismissed on that basis as well.

### 3.    *Plaintiff's complaint fails to allege conduct amounting to torture*

Finally, Plaintiff's TVPA claims must be dismissed for failure to state a claim because Plaintiff has not alleged conduct amounting to torture. Under the TVPA, torture is defined as:

> any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind.

TVPA § 3(b). Torture, as defined in the TVPA, "is a label that is usually reserved for extreme, deliberate and unusually cruel practices, for example, sustained systematic beating, application of electric currents to sensitive parts of the body, and tying up or hanging in positions that cause extreme pain." *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230, 234 (D.C. Cir. 2003) (internal quotations omitted).

Plaintiff's Complaint comes nowhere close to raising allegations of torture sufficient to state a claim under the TVPA. At most, Plaintiff alleges that the Israeli family-law system discriminates against fathers in child custody disputes, that Plaintiff and his children were kept in "prison-like conditions" during Plaintiff's

22

supervised visits with his children, and that Israeli social workers filed false reports about Plaintiff, including a diagnosis of "Active Psychosis."[35] Even accepting these allegations as true, Plaintiff's claim that he suffered "torture," as it is defined in the TVPA (or under any other definition for that matter), fails to state a claim for relief. *See Simpson*, 326 F.3d at 234 (holding that plaintiff failed to allege torture where he was subjected to months-long detention, interrogation, and death threats).[36]

**D.      *Plaintiff's Proposed Amendment to Her Complaint Would Be Futile***

Under Rule 15(a), Plaintiff could have amended the Complaint as a matter of course if he had done so within 21 days after being served with UJA-Federation's or El Paso and Kinder Morgan's motions to dismiss. *See* Fed. R. Civ. P. 15(a)(1)(B). But Plaintiff failed to amend within the time allowed, and he may now amend "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Defendants oppose Plaintiff's motion for leave and argue that the Court

---

[35]      *See, e.g.*, Plaintiff's Complaint ¶¶ 64, 66, 68.

[36]      The definition of torture explicitly excludes "pain or suffering arising only from or inherent in, or incidental to, lawful sanctions." TVPA § 3(b). Plaintiff has not alleged that any of the conduct directed at him was in violation of Israeli law. Indeed, Plaintiff appears to be complaining about the very operation of the Israeli legal system. This cannot state a claim for torture under the TVPA. *See Nikbin v. Islamic Republic of Iran*, 517 F. Supp. 2d 416, 425-26 (D.D.C. 2007) (dismissing TVPA claim for torture where plaintiff was subjected to forty lashes because such punishment was legal under Iranian law).

23

should deny leave to amend because amendment would be futile.  An amendment is futile if it would not survive a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See Landavazo v. Toro Co.*, 301 F. App'x 333, 337 (5th Cir. 2008) (per curiam).  As mentioned above, Plaintiff's Proposed Amendment seeks to add (i) eight additional plaintiffs who raise allegations similar to Plaintiff's, (ii) four additional defendants that appear to have no connection to the allegations against the existing Defendants, and (iii) a new cause of action for intentional infliction of emotion distress.  None of these proposed changes cures the defects in Plaintiff's claims against Defendants, and the Proposed Amendment could not survive a motion to dismiss.

### 1.     *Plaintiff's Proposed Amendment fails to make out a prima facie case for personal jurisdiction over UJA-Federation*

Plaintiff's Proposed Amendment would be futile because it fails to make out a prima facie case for either specific or general personal jurisdiction over UJA-Federation.  The only new jurisdictional allegations as to UJA-Federation are as follows: (i) one of the proposed new defendants, United Jewish Federation of Greater Houston ("JFH")[37] "acts as the local office in this district for

---

[37]     The Proposed Amendment refers to the United Jewish Federation of Greater Houston. This appears to be a reference to the Jewish Federation of Greater Houston. Research has revealed no "United Jewish Federation of Greater Houston."

[UJA-Federation] via the [United Jewish Federations of North America]";[38] (ii) JFH acts as a local conduit between Christian donors in Texas and entities such as UJA-Federation;[39] and (iii) UJA-Federation has a toll-free number and online donation page that are "valid in all 50 states, including the State of Texas."[40]

The allegations in the Proposed Amendment simply do not provide a basis for the claim that JFH acts as a local office for UJA-Federation. As the only support for this claim, Plaintiff cites a hearsay newspaper article (Exhibit 14 to the Proposed Amendment) reporting on the 1999 merger of the United Jewish Appeal, the Council of Jewish Federations, and United Israel Appeal, "creating a fund-raising behemoth with a focus on the kind of individualized giving that is changing the face of American philanthropy."[41] To begin with, the article refers to United Jewish Appeal, Inc. ("UJA"), not UJA-Federation. UJA was a nationwide Jewish philanthropic organization that was folded into the United Jewish Communities with the aforementioned 1999 merger. The United Jewish Communities is now known as The Jewish Federations of North America ("JFNA").[42]

---

[38]    Plaintiff's Proposed Amendment ¶ 13.

[39]    *Id.*

[40]    *Id.* ¶ 10.

[41]    *Id.*

[42]    *See* The Jewish Federations of North America website, http://www.jewishfederations.org/.

25

UJA-Federation is a separate and distinct organization and the Proposed Amendment includes no credible allegations that it is under common control with JFNA. JFH, which apparently has been active in the Houston Jewish community since 1936,[43] is similarly a distinct entity from UJA-Federation. Plaintiff has asserted no allegations that would justify imputing JFH's Texas contacts to UJA-Federation, a New York corporation that has already been demonstrated to lack sufficient contacts with Texas. The article attached as Exhibit 14 to the Proposed Amendment does not mention either UJA-Federation or JFH, and it certainly does not say that JFH acts as UJA-Federation's "local office in this district."[44]

Minimum contacts with Texas cannot be imputed from one defendant to another. *See Shaffer v. Heitner*, 433 U.S. 186, 204 & n.19 (1977) (holding that jurisdiction depends on the relationship of each defendant to the forum, not the relationship between defendants); *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773-74 (Tex. 1995) (orig. proceeding) (holding that conspiracy claim could not be used to impute jurisdictional contacts from one defendant to another). Just because UJA-Federation and JFH are both affiliated with the same national

---

[43]    *See* Jewish Federation of Greater Houston, *About Our Federation*, http://www.houstonjewish.org/page.aspx?id=191156.

[44]    *Cf.* Plaintiff's Proposed Amendment ¶ 13.

organization does not mean that JFH's contacts with Texas can be imputed to UJA-Federation.

Plaintiff does not allege that the JFH has a parent-subsidiary or any other corporate relationship with UJA-Federation.  But even if it such a relationship did exist, to pierce the corporate veil for jurisdictional purposes, Plaintiff would be required to establish a prima facie case that "the parent corporation exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002) (internal quotations omitted).  Plaintiff has not established any corporate relationship between UJA-Federation and JFH, much less "the level of control . . . that is required to fuse these two entities for jurisdictional purposes." *Knight Corp. v. Knight*, 367 S.W.2d 715, 730 (Tex. App.—Houston [14th Dist.] 1963, no pet.) (orig. proceeding).

Nor has Plaintiff alleged an agency relationship such that JFH's Texas contacts can be imputed to UJA-Federation.  A court does not presume the existence of an agency relationship. *Townsend v. Univ. Hosp.*, 83 S.W.3d 913, 921 (Tex. App.—Texarkana 2002, pet. denied).  Instead, the plaintiff must credibly allege that an agency relationship exists. *See id.* "An essential element of the principal-agent

relationship is the alleged principal's right to control the actions of the alleged agent." *Id.* Here, Plaintiff has proffered no evidence that JFH was UJA-Federation's agent in Texas and there is no basis to impute contacts under an agency theory. At the end of the day, Plaintiff's conclusory assertions that JFH acted as UJA-Federation's local office in this District and that JFH is a conduit between local donors and UJA-Federation cannot subject UJA-Federation to personal jurisdiction in Texas. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (courts are not required "to credit conclusory allegations, even if uncontroverted").

As to UJA-Federation's phone number and website, neither of these allegations supports a case for personal jurisdiction. Because the allegations in this case do not relate to phone calls or website donations, the facts alleged in the Proposed Amendment are relevant only to a general jurisdiction inquiry. The mere maintenance of a website that is accessible anywhere in the world (including the plaintiff's chosen forum) is not sufficient to subject a non-resident defendant to general jurisdiction in that forum. *See Revell v. Lidov*, 317 F.3d 467, 470–71 (5th Cir. 2002).[45] In *Revell,*

---

[45] For a jurisdiction inquiry based on a defendant's website, the defendant's contacts are analyzed on a sliding scale. *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 677 (Tex. App.—Fort Worth 2001, no pet.). Websites such as UJA-Federation's are best described as "interactive" because they "allow the 'exchange' of information between a potential customer and a host computer." *Reiff v. Roy*, 115 S.W.3d 700, 706 (Tex. App.—Dallas 2003, pet. denied). Jurisdiction based on "interactive" websites is determined by the degree of interaction allowed by the website. *Id.* As mentioned

the Fifth Circuit affirmed the district court's ruling that maintenance of a website accessible by Texas residents did not subject Columbia University to general jurisdiction in Texas: [T]he question of general jurisdiction is not difficult here. Though the maintenance of a website is, in a sense, a continuous presence everywhere in the world, the cited contacts of Columbia with Texas are not in any way "substantial." *Id.* at 471.

In *Reiff v. Roy*, 115 S.W.3d 700 (Tex. App.—Dallas 2003, pet. denied), the Dallas Court of Appeals rejected a plaintiff's claim for personal jurisdiction based on an interactive hotel website that solicited business on the internet, was available to anyone with internet access, allowed reservations to be made by Texas residents through the website, and provided a toll-free number to make reservations over the telephone. *See id.* at 705–06. In so doing, the court held that "these assertions do not show systematic and continuous contacts between [the defendant] and Texas." *Id.* at 706.

Similarly, in *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25 (1st Cir. 2010), the First Circuit affirmed a district court's dismissal of a complaint where the plaintiff

---

above, however, Plaintiff's claims do not arise from donations made to UJA-Federation's website or through its toll-free number. The proper analysis in this case is thus whether UJA-Federation is subject to general jurisdiction based on its website; however, the sliding scale test "is not well adapted to the general jurisdiction inquiry." *Revell*, 317 F.3d at 471.

sought to subject a Maine hospital to personal jurisdiction in New Hampshire because the hospital's website allowed "users to make online donations, complete patient pre-registration, register for classes, find a doctor, and apply for employment." *Id.* at 35. The court recognized that these features made the website "interactive," but held for the hospital because the website was "primarily informational," is available to anyone in the world with internet access, and does not specifically target New Hampshire residents. *Id.* Importantly, "[t]he mere fact that such an interactive site is accessible in New Hampshire does not indicate that MMC purposefully availed itself of the opportunity to do business in New Hampshire." *Id.*

The same is true here. The mere fact that UJA-Federation's website and toll-free number are available to Texas residents does not mean that UJA-Federation purposefully availed itself of the opportunity to do business in Texas. "[I]n other words, while [UJA-Federation] may be doing business with Texas, it is not doing business in Texas." *Revell*, 317 F.3d at 471. Just as in Cossaboon, UJA-Federation's website and toll-free number are available to anyone who wishes to use them. And UJA-Federation allows users to make online donations. But UJA-Federation's website is primarily informational—providing details about UJA-Federation's charitable activities—and UJA-Federation does not specifically target Texas residents

30

through its website.[46] Accordingly, there is no basis for the exercise of personal jurisdiction over UJA-Federation.[47]

Finally, even if Plaintiff's Proposed Amendment did allege sufficient facts to make out a prima facie case for personal jurisdiction, amendment still would be futile because, as demonstrated below, the Proposed Amendment fails to invoke the Court's subject-matter jurisdiction and fails to state a claim upon which relief can be granted.

### 2.    *Plaintiff's Proposed Amendment cannot save his ATS claims*

Amendment would be futile as to Plaintiff's ATS claims for at least two reasons.  First, the Proposed Amendment seeks to add additional plaintiffs, some of whom are alleged to be aliens.   But the existence of aliens in the Proposed Amendment cannot confer standing on this Plaintiff.  Rule 15 does not permit a plaintiff who lacks standing to cure this defect by adding additional parties through amendment.  *See Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. Unit A Mar. 1981) (holding that "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs").

---

[46]    *See* Zimmerman Declaration ¶ 13 ("UJA-Federation does not actively solicit donations from the State of Texas.").

[47]    The fact that Judge Guthrie sua sponte transferred this action from the Eastern District of Texas to this District does not constitute a judicial determination that UJA-Federation is subject to personal jurisdiction in Texas.

In *TXCAT v. Phoenix Group Metals, LLC*, No. H-10-0344, 2010 WL 5186824 (S.D. Tex. Dec. 14, 2010), the district court granted a defendant's motion to dismiss based on the plaintiff's lack of standing. The plaintiff sought to cure the standing defect by filing a motion for leave to file an amended complaint. The district court agreed with the defendants, however, that if the plaintiff lacked standing, "the Court is not able to allow [plaintiff] to amend its complaint and to substitute a plaintiff with standing to create subject matter jurisdiction since the Court would have had no jurisdiction before the proposed amendment." *Id.* at *3. As the district court recognized, "a plaintiff may not create jurisdiction by amendment where none currently exists." *Id.* The same is true here.

Second, the Proposed Amendment includes the same type of conclusory allegations as the Complaint and fails to allege the requisite purposeful conduct to make out a claim for aiding and abetting liability under the ATS. *Cf. Abecassis*, 704 F. Supp. 2d at 655–56. Finally, if the Supreme Court affirms the Second Circuit's decision in *Kiobel*, the ATS's inapplicability to corporate defendants would be another reason why amendment would be futile.

### 2. *Plaintiff's Proposed Amendment cannot save his TVPA claims*

Plaintiff's Proposed Amendment's claims under the TVPA could not survive a motion to dismiss because (i) the Supreme Court has held that a corporations cannot

be a defendant under the TVPA, *see Mohamad*, 132 S. Ct. at 1705, 1707–10; (ii)

aiding and abetting liability is not recognized under the TVPA; and (iii) Plaintiff has

plainly not alleged conduct amounting to "torture" as that term is defined in the

TVPA.  None of these defects is cured by the Proposed Amendment, which merely

seeks to add additional parties and a new tort claim for intentional infliction of

emotional distress.[48]

### 3. *Plaintiff's Proposed Amendment fails to state a facially plausible claim against El Paso and Kinder Morgan*

The Supreme Court addressed the requisite pleading standard under Rule 8 in

*Iqbal*, stating, "the pleading standard [Federal Rule of Civil Procedure] 8 announces

does not require 'detailed factual allegations,' but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  556 U.S. 662, 678

(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Court further

noted that "only a complaint that states a plausible claim for relief survives a motion

to dismiss."  *Id.* at 679 (citing *Twombly*, 550 U.S. at 556) (emphasis added).  With

respect to "plausibility," the *Iqbal* Court explained, "[a] claim has facial plausibility

---

[48]    Plaintiff alleges in the Proposed Amendment that he and the other proposed plaintiffs
       have exhausted their remedies in Israel, which is a requirement under the TVPA before
       bringing suit in the United States.  (Proposed Amendment ¶¶ 96-98.)  Putting aside
       whether the allegations in the Proposed Amendment satisfy the exhaustion of remedies
       requirement under the TVPA, the Supreme Court's recent decision in *Mohamad* has
       foreclosed corporate liability under that statute.

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

Plaintiff's Proposed Amendment includes only one new factual allegation in which El Paso and Kinder Morgan are referenced by name: "Defendant UJA maintains an Israeli office on behalf of Defendant UJA, Defendant El Paso and Defendant Kinder Morgan which provides a strategic location for these Defendants in Jerusalem to have easy access to the Israeli legislature on a daily basis where they purposefully lobby for a radical agenda that destroys men in divorce."[49] As proposed, the singular factual allegation against El Paso and Kinder Morgan amounts to no more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," which falls short of the pleading standard required to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Even in combination with the various allegations made against "Defendants" collectively, the Proposed Amendment does not contain "factual content that allows the court to draw the reasonable inference that [El Paso and Kinder Morgan are] liable for the misconduct." *Id.* As such, for this reason and the additional reasons identified herein, amendment would be futile.

---

[49]     Plaintiff's Proposed Amendment ¶ 48.

### 4.      *Plaintiff's Proposed Amendment fails to state a claim for intentional infliction of emotional distress*

Plaintiff's Proposed Amendment seeks to add one new claim for ongoing and intentional infliction of emotional distress.[50] Amendment is also futile as to this claim because it too could not survive a motion to dismiss.   Intentional infliction of emotional distress is a "gap-filler" tort that "was never intended as an easier and broader way to allege claims already addressed by our civil and criminal laws, nor was it intended to replace or duplicate existing statutory or common law remedies." *Draker v. Schreiber*, 271 S.W.3d 318, 322 (Tex. App.—San Antonio 2008, no pet.). To state a claim for this tort, Plaintiff must meet the "exacting requirements" to demonstrate that (1) Defendants acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) Defendants' actions caused Plaintiff emotional distress; and (4) the emotional distress suffered by Plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815 (Tex. 2005) (noting the "exacting requirements" to prove a claim for intentional infliction of emotional distress).   A defendant's conduct is not extreme and outrageous just because it is tortious or otherwise wrongful. *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001).

---

[50]      *Id.* ¶ 138–45.

35

*Creditwatch* involved a claim for intentional infliction of emotional distress based on a supervisor's alleged sexual advances and retaliatory conduct. The Texas Supreme Court noted that, if true, the conduct alleged "was callous, meddlesome, mean-spirited, officious, overbearing, and vindictive—but not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" 157 S.W.3d at 817–18 (quoting *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)).

Here, Plaintiff has not come close to meeting the "exacting requirements" to state a claim for intentional infliction of emotional distress. *See Creditwatch*, 157 S.W.3d at 815. Regardless of whatever motive Plaintiff may ascribe to Defendants' actions, there is no question that lobbying a government about family law issues and donating money to charitable organizations is perfectly legitimate conduct. And courts are required to examine the nature of the defendant's conduct—not just its motive—when considering liability for intentional infliction of emotional distress. *See Texas Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 612 (Tex. 2002). Because Plaintiff's Proposed Amendment fails to state a claim for intentional infliction of emotional distress, it would be futile to allow Plaintiff leave to amend to add such a claim.

36

## IV.  CONCLUSION

Based on all of the foregoing, the Court hereby

**ORDERS** that Defendant United Jewish Appeal-Federation of Jewish Philanthropies of New York's Motion to Dismiss for Lack of Subject-Matter Jurisdiction, Lack of Personal Jurisdiction, and Failure to State a Claim (Document No. 17) is **GRANTED**.  The Court further

**ORDERS** that Defendants Kinder Morgan, Inc. and El Paso E&P Company, L.P.'s Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Failure to State a Claim.  (Document No. 20) is **GRANTED**.  The Court further

**ORDERS** that Plaintiff R. David Weisskopf's Motion for Leave of Court to File Amended Complaint (Document No. 31) is **DENIED**.  The Court further

**ORDERS** that this suit is **DISMISSED**.

The Court will issue a Final Judgment in a separate order.

SIGNED at Houston, Texas, on this ___22___ day of August, 2012.

DAVID HITTNER
United States District Judge

37